**Commonwealth of Massachusetts**
**County of Worcester**
**The Superior Court**

CIVIL DOCKET #: WOCV2004-00294-C

RE:    Catinella v Maxtor Corporation

TO:    N Kane Bennett, Esquire
       Halloran & Sage
       225 Asylum Street
       1 Goodwin Square
       Hartford, CT 06103

## NOTICE OF DOCKET ENTRY

You are hereby notified that on **03/08/2004** the following entry was made on the above referenced docket:

**Case REMOVED this date to US District Court of Massachusetts**

Dated at Worcester, Massachusetts this 8th day of March, 2004.

Francis A. Ford,
Clerk of the Courts

BY: Alexander Rodriguez, III
Assistant Clerk

Telephone: 508-770-1899, Ext. 125 or Ext. 105 (Session Clerk)

# COMMONWEALTH OF MASSACHUSETTS

**FILED**

WORCESTER, SS

F R 13 2004

ATTEST:

CLERK

SUPERIOR COURT
TRIAL COURT
CIVIL ACTION NO. 04-0294C

|                                      |     |               |
| ------------------------------------ | --- | ------------- |
| PETER CATINELLA,                     | )   |               |
| **Plaintiff**                        | )   |               |
|                                      | )   |               |
| v.                                   | )   | **COMPLAINT** |
|                                      | )   |               |
| MAXTOR CORPORATION,                  | )   |               |
| **Defendant**                        | )   |               |

1. The Plaintiff, Peter Catinella (Catinella), is an individual who resides in Framingham, Middlesex County, Massachusetts.

2. The Defendant, Maxtor Corporation (Maxtor), is a corporation with an ordinary place of business at 333 South Street, Shrewsbury, Worcester County, Massachusetts.

3. On or about April, 2001, Maxtor purchased the Hard Disk Drive division of another company, Quantum Corporation, which division had a facility at the South Street location.

4. At the time Maxtor Purchased the South Street facility, Catinella was an employee of Quantum, and worked at the South Street facility.

5. Immediately after purchasing the Quantum facilities, Maxtor presented Catinella with an Employee Handbook, and required him to acknowledge receipt and agreement with the terms set forth in the handbook as a condition of future employment, by signing its last

1

page.

6.     Catinella executed the Employee Handbook in April of 2001.  His employment thus continued until he was terminated on September 30, 2003.

### Concerning Maxtor's directive to violate trade secrets and agreements

7.     In October/November of 2001, concerning a program known as the "ORCA" program, Maxtor had contracted with two companies, PMDM and Ozu, to manufacture the Orca Spindle Motor.

8.     Maxtor experienced high failure rates in the H.S.A. spindle motors that were being manufactured by a third party company called PMDM.

9.      In order to remedy the problem, Catinella's supervisors ordered him to hand carry spindle motors designed and manufactured by a company named Ozu, a competitor of PMDM, to PMDM's facility in order for PMDM to utilize Ozu's technology to correct the problem.

10.    At the time Catinella was instructed to share Ozu's technology with PMDM, Maxtor was bound by a Non-Disclosure Agreement with Ozu.

11.    Maxtor did not have Ozu's permission to share Ozu's technology with PMDM.  Further, Ozu did not have knowledge of Maxtor's intended disclosure of its technology.

12.    The Maxtor Employment Handbook expressly prohibited Maxtor employees from disseminating confidential information of third parties, including suppliers.

13.    Catinella refused to participate in this intentional and wrongful transfer of proprietary information.

2

14.  In January of 2002, Catinella participated in a teleconference with his manager's director who was located in Longmont, Colorado.

15.  During the teleconference, the director acknowledged that Catinella and his co-workers had worked with a company named MKE, Ipponmatsu to manufacture computer hard drives using Japanese made Head Stack Assemblies (H.S.A.) for several years and had easy access to confidential information from MKE.

16.  On information and belief, Maxtor and MKE, Iponmatsu were parties to a non-disclosure agreement.

17.  Maxtor's director informed Catinella and his co-workers that Maxtor intended to switch from Japanese suppliers of H.S.A. to less expensive Chinese suppliers but needed confidential specifications from MKE on the Japanese process for packaging the Head Stack in order to successfully change sources.

18.  During that teleconference, the director demanded that Catinella and his co-workers steal the confidential H.S.A. packaging specifications from MKE, Ipponmatsu.

19.  Catinella refused to steal MKE, Ipponmatsu's proprietary information and that of MKE's vendors.

20.  In January of 2003, Fuji Electric Corporation and Komag Media were under agreement with Maxtor to manufacture storage media as part of a program referred to as the Cobra Program. Fuji and Komag were competitors. The agreements contained non-disclosure agreements with respect to both Fuji's and Komag's proprietary technology.

21.  One of Catinella's primary duties was to gather data on Fuji and Komag production issues with respect to the Cobra program, and present this data with analysis at weekly

3

Cobra Program Review Board meetings.

22. On January 12, 2003, Catinella traveled to Fuji Electric Corporation in Japan with a ~~director from Maxtor's Longmont, Colorado facility to investigate defects in Fuji's media~~ that were not appearing in Komag's media.

23. Maxtor's director requested that Catinella surreptitiously ship Fuji media, without Fuji's knowledge, to Komag in order to allow Komag to perform an analysis on Fuji's media and potentially solve the problem. Catinella refused to ship the Fuji media to Komag.

24. Maxtor had previously asked Komag to exchange media with Fuji but Komag had refused in order to protect its trade secrets.

25. On or about February 25, 2003, Catinella attended a meeting concerning high Fuji media fail rates on the Cobra project. During that meeting, Catinella's superiors verbally berated him for the delay in determining the cause of these high failure rates.

26. As a direct result of Catinella's refusal to steal proprietary data of Maxtor's vendors, Catinella's supervisors instructed Catinella that he was to be relieved of his presentation duties to the Cobra Program Review Committee.

27. On March 18, 2003, a conference call between Maxtor and Komag personnel took place concerning a process change to increase the throughput of media being manufactured for a product that Catinella supported. Catinalla asked Komag representatives for the process details of the changes in order to confirm for his supervisors that the process change would not threaten the product program. Komag refused to provide this confidential technical data, openly accusing Maxtor of disseminating Komag's trade secrets to competitors.

28.    Catinella was eventually able to obtain sufficient data for Maxtor to confirm the changes proposed by Komag, but he was severely criticized for the lack of detail.

29.    In June of 2003, Catinella attended a technical review with Max Media Corporation, a subsidiary of Maxtor. At that time, MMC directors requested that Catinella provide MMC with Komag and Fuji media that was in the research & development stage but not yet available to the public. MMC, a competitor of Komag and Fuji, intended to reverse engineer the media and understand the proprietary aspects of each. To this point, MMC's media was inferior to that being produced by Komag and Fuji.

30.    Catinella refused to provide the requested media to MMC. and was verbally abused and criticized by MMC directors as a result.

31.    On subsequent occasions, between June of 2003 and September of 2003, MMC requested that Catinella provide it with confidential competitor data, but on each occasion, Catinella refused. After each such refusal, Catinella would be verbally abused and criticized.

32.    In September of 2003, Catinella was restored to his presentation responsibilities before the Cobra Program Review Board. After concluding his presentation, his superiors embarrassed and insulted him before the rest of the review board.

**Concerning the Maxtor Incentive Plan**

33.    On June 16, 2003, Maxtor notified Catinella and others in his group about Maxtor's 2003 incentive plan. Under the plan, Catinella would receive a bonus of seventeen percent of his December 31, 2003 base salary if Maxtor achieved certain net income results, and based on employee performance.

34.    Until he was terminated, Catinella qualified for the incentive plan, having met all relevant criteria to that point.

35.    On information and belief, Maxtor has surpassed its performance goals sufficiently for Maxtor to increase incentive bonuses by fifty percent.  Based on his documented performance rating at the time of his termination, Catinella would have received a substantial incentive bonus if he continued to be employed at Maxtor.

### Concerning Catinella's pre-textual termination

36.    On September 29, 2003, Catinella arrived at his office in a timely fashion.  Upon entering the parking lot, another vehicle, being driven in a negligent manner, almost collided with Catinella's.

37.    Catinella entered his office, upset by the parking lot incident, made a comment to himself about the driver of the other vehicle.

38.    Another Maxtor employee, Robert Reed, heard Catinella's comment and asked if Catinella was alright.  Catinella confirmed that he was and thanked Reed for his concern.

39.    At noon, on September 29, 2003, Maxtor's Human Resource Director at Catinella's facility called Catinella into her office, accused Catinella of making threatening statements to Mr. Reed and terminated Catinella's employment.

### COUNT I-WRONGFUL TERMINATION

40.    Plaintiff realleges and incorporates Paragraphs 1 through 39 herein.

41.    The Plaintiff's termination constitutes a violation of Massachusetts public policy in that

6

Plaintiff was terminated for refusing to violate civil and criminal law.

42.    The Plaintiff's termination also constitutes a violation of Massachusetts public policy in that Plaintiff's termination was meant to deprive him of a bonus that he had already substantially earned.

43.    As a direct and proximate result of the Defendant's actions, Plaintiff has suffered damages according to his proof at trial.

## COUNT II-BREACH OF CONTRACT

44.    Plaintiff realleges and incorporates Paragraphs 1 through 39 herein.

45.    Defendant has breached its express agreement to pay Plaintiff an incentive bonus for which the Plaintiff has been damaged according to his proof at trial.

## COUNT III-IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

46.    Plaintiff realleges and incorporates Paragraphs 1 through 39 herein.

47.    The Defendant's termination of the Plaintiff constitutes a breach of the implied covenant of good faith and fair dealing implied in the contract to pay Plaintiff an incentive bonus, for which Plaintiff has been damaged according to his proof at trial.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court award damages on all counts, together with interest, costs and attorney's fees, and award such other and further relief as the Court deems appropriate.

7

**PLAINTIFF CLAIMS A JURY TRIAL**

Respectfully submitted,

Peter Catinella
By his attorneys,

Robert S. White, Esq. BBO #552229
Bourgeois, Dresser, White & Beard
4 Dix Street
Worcester, MA 01609
(508) 798-8801

Dated:   February 12, 2004

8

A true copy by photostatic process
Attest
Asst. Clerk

**WORCESTER SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# WOCV2004-00294
## Catinella v Maxtor Corporation

| | | | | |
|---|---|---|---|---|
| **File Date** | 02/13/2004 | **Status** | Disposed: transfered to other court (dtrans) | |
| **Status Date** | 03/08/2004 | **Session** | C - Civil C (16 Worcester) | |
| **Origin** | 1 | **Case Type** | A01 - Services, labor, materials | |
| **Lead Case** | | **Track** | F | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 05/13/2004 | **Answer** | 07/12/2004 | **Rule12/19/20** | 07/12/2004 |
| **Rule 15** | 07/12/2004 | **Discovery** | 12/09/2004 | **Rule 56** | 01/08/2005 |
| **Final PTC** | 02/07/2005 | **Disposition** | 04/08/2005 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Peter Catinella
Active 02/13/2004

**Private Counsel 552229**
Robert S White
Bourgeois Dresser & White
4 Dix Street
Worcester, MA 01609
Phone: 508-798-8801
Fax: 508-754-1943
Active 02/13/2004 Notify

**Defendant**
Maxtor Corporation
333 South Street
Served: 02/19/2004
Served (answr pending) 02/19/2004

**Private Counsel 636731**
N Kane Bennett
Halloran & Sage
225 Asylum Street
1 Goodwin Square
Hartford, CT 06103
Phone: 860-297-4656
Fax: 860-548-0006
Active 03/03/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 02/13/2004 | 1.0 | Complaint & civil action cover sheet filed and rule 29 statement-CJ |
| 02/13/2004 | | Origin 1, Type A01, Track F. |
| 02/13/2004 | | Filing fee paid in the amount of $240.00, surcharge in the amount of $15.00 including $20.00 security fee. ($275.00) |
| 02/19/2004 | 2.0 | SERVICE RETURNED:  Maxtor Corporation(Defendant)  Service made on 2/17/04  (s). |
| 03/03/2004 | | Atty N Kane Bennett's notice of appearance for Maxtor Corporation |
| 03/03/2004 | 3.0 | Notice for Removal to the United States District Court filed by Maxtor Corporation |
| 03/08/2004 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

| Date | Session | Event | Result |
|---|---|---|---|
| 02/14/2005 | Civil C (16 Worcester) | Status: Review Annual Fee Send Notice | |

A true copy by photostatic process
Attest:
Asst. Clerk

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 04—0294C | Trial Court of Massachusetts Superior Court Department County: Worcester |
|---|---|---|

| PLAINTIFF(S) Peter Catinella | DEFENDANT(S) Maxtor Corporation |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Robert S. White, Bourgeois, Dresser, White & Beard, 4 Dix Street Worcester, MA 01609 Board of Bar Overseers number: 552229 | ATTORNEY (If known) |
|---|---|

**Origin code and track designation**

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Contract--Services | (F ) | ( X ) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
    Subtotal $. . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
F. Other documented items of damages (describe)
    $. . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

    $. . . . . . . . . . .
    TOTAL $ .N/A. . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): The Plaintiff was fired for refusing to steal vendors' trade secrets, and in order to avoid payment of performance bonus.

TOTAL $250,000.00. . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____   DATE: 2/12/04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

A true copy by photostatic process
Attest:
Asst. Clerk   2-13-04

# COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

Superior Court
Department of the Trial Court
of the Commonwealth
Civil Action

No. **WOCV 2004-00294**

PETER CATINELLA )
)
)
)
**Plaintiff (s)** )                    **SUMMONS**
)
V. )
)
MAXTOR CORPORATION )
)
**Defendant (s)** )

\* To the above-named Defendant: Maxtor Corporation

ATTEST:

You are hereby summoned and required to serve upon Robert S. White

whose address is 4 Dix Street, Worcester, MA 01609, plaintiff's attorney,
an answer to the complaint which is herewith served upon you, within 20 days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgement by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the SUPERIOR COURT
Department of the Trial Court at WORCESTER either before service upon plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counter-
claim any claim which you may have against the plaintiff which arises out of the
transaction of occurrence that is the subject matter of the plaintiff's claim or you will
thereafter be barred from making such claim in any other action.

Witness, SUZANNE V. DEL VECCHIO, Esquire, at Worcester, the 12th
day of February in the year of our Lord two thousand and
four .

**Clerk**

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to that particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT —
CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE — OTHER.

\* NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but
if you claim to have a defense, either you or your attorney must serve a copy of your written
answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior
Court, Room 21.



**Worcester County Sheriff's Office** • P.O. Box 1066 • Worcester, MA 01613 • (508) 752-1100
*Worcester, ss*

02/18/2004

I hereby certify and return that on 02/17/2004 at 10:50am I served a true
and attested copy of the Summons and Complaint, Plaintiff's Request for
Production of Documents to Defendant, Certificate of Service, Notice of
Deposition in this action in the following manner:  To wit, by delivering
in hand to MAXTOR CORPORATION  at 333 SOUTH ST, SHREWSBURY, MA.  Fees:
Service 30.00, Travel 4.48, Conveyance 3.00, Attest 5.00 & Postage and
Handling 1.00, Total fees: $43.48

Deputy Sheriff Michael J Ahearn

_____
                          **Deputy Sheriff**

**N.B. TO PROCESS SERVER:**

PLEASE PLACE **DATE** YOU **MAKE** SERVICE ON DEFENDANT **IN** THIS BOX
**ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

February 17 , **20** 04

**COMMONWEALTH OF MASSACHUSETTS**

**Worcester, ss.**

**Superior Court**
**Civil Action**

**No.**

Peter Catinella .......................**Plaintiff**

v.

Maxtor Corporation .......................**Defendant**

**SUMMONS**

**(Mass. R. Civ. P. 4)**

A true copy by photostatic process
Attest:
Asst. Clerk

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

SUPERIOR COURT
TRIAL COURT
**CIVIL ACTION NO. 04-0294C**

PETER CATINELLA
        Plaintiff,

        :
        :
        :

v.

        :
        :
        :

MAXTOR CORPORATION,
        Defendant

        :
        :

**APPEARANCE OF COUNSEL**

## TO THE CLERK OF THE ABOVE-NAMED COURT:

The undersigned hereby gives notice of his Appearance as counsel for the defendant, **Maxtor Corporation,** in the above-captioned matter.

Date: March 3, 2004

Respectfully submitted,

By: _____
N. Kane Bennett of
**HALLORAN & SAGE, LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103
BBO# 636731
Attorney for the Defendant

A true copy by photostatic process
Attest:
Asst. Clerk